**MCM LAW GROUP, P.C.**
Cesar O. Montoya (SBN: 320291)
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287

Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| URIEL ANDRÉS CUCAITA DÍAZ,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, *et al.*,<br><br>Respondents. | Case No.<br><br>**PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

## I. <u>INTRODUCTION</u>

1. Petitioner, URIEL ANDRÉS CUCAITA DÍAZ ("Petitioner"), through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing unlawful detention by the Department of Homeland Security ("DHS"), the Department of

Justice ("DOJ"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Respondents"). Petitioner voluntarily surrendered to immigration authorities at the border on December 23, 2022. DHS detained him and thereafter paroled him into the United States on or about December 29, 2022, expressly requiring him to report to ICE within sixty days as a condition of parole. He thereafter remained at liberty for more than three and one-half years while reporting to ICE as directed, appearing for scheduled immigration appointments, pursuing an affirmative application for asylum, obtaining employment authorization and a Social Security number, and working to support his wife and two children. On August 19, 2026, Petitioner voluntarily appeared for a scheduled ICE processing appointment at the Los Angeles Federal Building. Respondents took him into custody at that appointment. He has been detained ever since, without advance notice, without any individualized custody determination, and without any hearing before a neutral decisionmaker. That detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.

2. **Petitioner has no criminal history of any kind.** He has never been arrested, charged, or convicted of any offense. He has no pending criminal case, no probation, no citations, no driving-under-the-influence history, and no outstanding

warrant. He has never failed to appear for any immigration appointment or any court hearing. Respondents identified to Petitioner no materially changed circumstance that would justify revoking the liberty they had previously granted.

3. This case presents a fundamental due process violation. **Courts have increasingly recognized that when the government releases a noncitizen, that release creates a heightened liberty interest that cannot be extinguished without meaningful procedural safeguards**. Petitioner's re-detention—without notice and without a pre-deprivation hearing—violates the Fifth Amendment. See *M.B. v. Noem*, No. 1:26-cv-00005-DJC-AC, 2026 WL 74155 (E.D. Cal. Jan. 9, 2026); *Diaz Hernandez v. Blanche,* No. 5:26-cv-04187-AJR, 2026 WL 2281008 (C.D. Cal. Aug. 4, 2026); *Aura Nohemi Palencia-Vargas v. Rios,* No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *3–4 (C.D. Cal. Aug. 20, 2026); *Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *1–2 (E.D. Cal. Aug. 24, 2026).

4. Respondents cannot justify the detention by recharacterizing Petitioner as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2). On July 30, 2026, the Ninth Circuit held that noncitizens apprehended in the interior of the United States are detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A). See *Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL

2196424, at *3 (9th Cir. July 30, 2026). Petitioner was not apprehended at the border on August 19, 2026, and he was not intercepted while presenting himself for admission. He was taken into custody in the interior of the United States, at an ICE office in Los Angeles, more than three and one-half years after immigration authorities released him into this country. **That decision resolves the statutory question in Petitioner's favor. It does not remedy the completed constitutional injury caused by Respondents' deprivation of Petitioner's liberty without constitutionally adequate procedures.**

5. These circumstances also create a substantial risk of an erroneous deprivation of liberty. Petitioner remains incarcerated for an indeterminate period, with his first immigration court master hearing not scheduled until September 1, 2026 and his asylum application still pending, without any meaningful determination that his continued detention serves any legitimate governmental interest.

6. Petitioner therefore seeks immediate release. Absent immediate intervention by this Court, Petitioner will continue to suffer irreparable harm through continued unlawful detention. The ongoing deprivation of liberty—without constitutionally adequate procedures—demands urgent judicial review and prompt relief.

**II. JURISDICTION**

7. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101, et seq.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

9. Federal courts retain jurisdiction over constitutional challenges to immigration detention. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). Petitioner seeks only individualized habeas relief, which is expressly preserved under 8 U.S.C. § 1252(f)(1). That provision prohibits lower courts from enjoining or restraining the operation of certain immigration statutes on a classwide basis, but it explicitly preserves relief "with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1). The Supreme Court's decision in *Garland v. Aleman Gonzalez* did not eliminate federal courts' authority to grant individualized habeas relief in detention cases. Instead, it limited only classwide injunctions that restrain the operation of detention statutes. Where Respondents

lack constitutional authority to continue detention without a legally adequate custody determination, this Court retains full power to order individualized relief, including release or a constitutionally compliant bond hearing. *See Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022).

10. Section 1226(e) is no bar. It "does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Nor does 8 U.S.C. § 1252(a)(5) or (b)(9) divest this Court of jurisdiction. Petitioner does not challenge any removal determination. He challenges only the lawfulness of his custody, which is the classic office of the writ.

## **III. VENUE**

11. Venue is proper in this district under 28 U.S.C. § 1391(e)(2). Petitioner is detained by Respondents at the **Adelanto ICE Processing Center** in Adelanto, California, which lies within this District and Division, and the officer in charge of custody decisions in Petitioner's case is located within this judicial district. Petitioner is subject at any time to transfer to another ICE detention facility. Undersigned counsel has no notice of any planned transfer and requests that

Petitioner remain within the jurisdiction of this Court pending resolution of this Petition.

## **IV. PARTIES**

12. Petitioner **URIEL ANDRÉS CUCAITA DÍAZ**, **A-Number 246-301-282**, is a native and citizen of Colombia. He was born on June 11, 1987 in Bogotá, Colombia. He voluntarily surrendered to immigration authorities near the southern border on December 23, 2022. DHS thereafter paroled him into the United States on or about December 29, 2022. Immediately before his detention he resided at 855 S. Citrus Avenue, Apartment 115, Azusa, California. He is currently detained at the **Adelanto ICE Processing Center** in Adelanto, California, in the custody and under the direct control of Respondents and their agents.

13. Respondent MARKWAYNE MULLIN is sued in his official capacity as Secretary of DHS. In that capacity, he is responsible for the implementation and enforcement of the INA and oversees ICE, the component agency responsible for Petitioner’s detention. He is empowered to carry out any administrative order against Petitioner and is a legal custodian of Petitioner.

14. Respondent TODD BLANCHE is sued in his official capacity as Attorney General of the United States and senior official of the DOJ. In that

capacity he oversees the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals ("BIA" or "Board").

15. Respondent DAVID J. VENTURELLA is sued in his official capacity as Acting Director of ICE. He is a legal custodian of Petitioner and has authority to release him.

16. Respondent ERNESTO SANTACRUZ JR. is sued in his official capacity as Acting Director of the Los Angeles ICE Field Office. He is charged with the detention and removal of noncitizens falling under the jurisdiction of that Field Office and is a legal custodian of Petitioner.

17. Respondent WARDEN, Adelanto ICE Processing Center, is sued in his or her official capacity as the warden of the facility where Petitioner is held. The Warden has immediate physical custody of Petitioner pursuant to a contract with ICE and is Petitioner's immediate custodian. As held by the Ninth Circuit, in habeas corpus cases the proper Respondent is the warden of the detention facility where the immigration detainee is held. *See Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

## <u>V. STATEMENT OF FACTS</u>

**A. Entry, Detention, and Release by Immigration Authorities.**

18. On December 23, 2022, Petitioner and his wife and two minor daughters encountered immigration authorities near the southern border. The family did not evade immigration authorities. Petitioner voluntarily surrendered to them. Petitioner and his family were transported to an immigration facility, where their fingerprints and photographs were taken and they were processed by DHS.

19. DHS's contemporaneous records establish that Petitioner was paroled into the United States. An Alien Booking Record identifies Petitioner's status as "PAROLED." DHS also issued a Form I-385 continuation dated December 29, 2022 stating: "AS A CONDITION OF YOUR PAROLE YOU ARE TO REPORT TO THE IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) OFFICE NEAR YOUR FINAL DESTINATION WITHIN 60 DAYS." A true and correct copy of Petitioner's parole and release records is attached as Exhibit A.

**B. More Than Three and One-Half Years of Compliant Supervised Liberty.**

20. Consistent with the written condition of parole, Petitioner reported to ICE as directed on February 23, 2023, within sixty days of his release, and thereafter appeared for every reporting appointment ICE scheduled for him. He

never missed a reporting appointment, remained reachable at his known address, and complied with every reporting requirement known to Petitioner and counsel.

21. On October 18, 2023, while he was not in Immigration Court proceedings, Petitioner submitted a Form I-589, Application for Asylum and for Withholding of Removal. The application itself states that Petitioner had never been in Immigration Court proceedings. USCIS thereafter scheduled Petitioner for biometrics at its El Monte Application Support Center on November 6, 2023, and the appointment notice reflects that his biometrics were processed that day. His asylum application remains pending. True and correct copies of the relevant I-589 pages and ASC appointment notice are attached as Exhibit B.

22. Petitioner applied for and received employment authorization and was issued a Social Security number. His Employment Authorization Document is in category C08, and his Social Security card is marked "VALID FOR WORK ONLY WITH DHS AUTHORIZATION." He worked pursuant to that authorization before his detention. A true and correct copy of those documents is attached as Exhibit C.

23. Petitioner has worked for and through Iglesia Cristiana Wesleyan in El Monte, California, beginning approximately one month after his arrival in the United States. His duties include collecting donated food and groceries for the

church, distributing them to members of the community, and performing repairs, maintenance, and other general work. He also worked with a bakery operation run through the church, making bread and distributing it. He remained employed through the date of his detention; the day he was detained was his day off. The church's pastors state that they have known Petitioner and his family for approximately three and one-half years and describe him as a reliable, active member committed to his family, faith, and service to the church and broader community. Their character and support letter is attached as Exhibit D.

24. Petitioner's family ties in the United States are substantial. He married Diana Carrillo on April 27, 2010 in Colombia. They have two daughters. **Petitioner's wife and both daughters lived with him at the family residence in Azusa, California until the day he was detained, and all three depend on him financially.** The family has lived at its current address for approximately one and one-half years.

**C. Petitioner Has No Criminal History and No Adverse Immigration History.**

25. **Petitioner has never been arrested. He has never been charged with or convicted of any criminal offense. He has no pending criminal case,**

**<u>has never been placed on probation, has never served any jail or prison sentence, and is not the subject of any arrest warrant.</u>**

26. Petitioner has never been ordered removed from the United States. He has never been granted or accepted voluntary departure. He has never departed the United States since his 2022 entry. He has never previously appeared before an Immigration Judge, has never previously requested or received an immigration bond hearing, has never filed an appeal to the Board, and has never previously filed a petition in federal court. The August 19, 2026 detention challenged here is the first time Petitioner has been taken into ICE custody since his release in December 2022.

**D. The August 19, 2026 Detention at a Scheduled Immigration Appointment.**

27. On August 19, 2026, Petitioner and his wife appeared for a scheduled ICE processing appointment at the Los Angeles Federal Building, 300 North Los Angeles Street, Los Angeles, California. The written appointment confirmation identified Petitioner by name and A-Number, set the appointment for 8:00 a.m., and listed the appointment type as “Processing.” Petitioner attended voluntarily

and as directed. Respondents took him into custody at that appointment. A true and correct copy of the appointment confirmation is attached as Exhibit E.

28. The only explanation given to Petitioner's wife was that Petitioner was detained because he had entered the country illegally. No officer identified any violation of any condition of release, any change in Petitioner's circumstances, any danger he was said to pose, or any reason to believe he would not appear at future proceedings. Petitioner and his wife held work permits, paid taxes, and had attended every appointment required of them.

29. Petitioner was held overnight at the same appointment location, in an area described to counsel as a basement, and was transferred the following day to Adelanto, where he remains detained. While detained, Petitioner was presented with a document concerning voluntary departure or deportation. He did not sign it.

30. At no time prior to Petitioner's detention did Respondents provide notice that they intended to revoke Petitioner's release or otherwise alter the conditions under which he had remained at liberty for more than three and one-half years. **Likewise, Petitioner was not afforded any pre-deprivation custody determination or bond hearing before being returned to ICE custody.**

**E. Immigration Court Posture.**

31. Petitioner is scheduled to appear before the Immigration Court on September 1, 2026 at 1:00 p.m. for a Master Calendar Hearing. That will be his first appearance before an Immigration Judge. No bond proceeding has been initiated or requested on his behalf, and no Immigration Judge has made any custody determination concerning him. As of the filing of this Petition, Counsel has not obtained Petitioner's Notice to Appear or other charging and custody-related records.

32. DHS's December 2022 records expressly identify Petitioner as having been paroled into the United States. Based on the records presently available to Petitioner and counsel, Petitioner received no advance written notice before August 19, 2026 that DHS intended to terminate his parole or take him back into custody. As of the filing of this Petition, counsel has not obtained records identifying any written parole-termination notice, Form I-286 Notice of Custody Determination, or other custody document issued on or after August 19, 2026.

33. Since his arrest on August 19, 2026, Petitioner has remained continuously detained. Based on the information presently available, Petitioner has not received an individualized custody determination before an Immigration Judge, or before any other neutral decisionmaker, regarding whether his continued detention is necessary. He therefore seeks habeas corpus relief from this Court to

challenge his continued unlawful detention and to obtain such relief as is necessary to ensure that his custody complies with constitutional and statutory requirements.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

34. Petitioner acknowledges that, under *Rodriguez-Vazquez v. Bostock*, an Immigration Judge may now exercise custody jurisdiction over a person detained under 8 U.S.C. § 1226(a). That does not defeat the claim presented here. Petitioner does not contend that administrative custody review is unavailable in the abstract. He contends that Respondents deprived him of an established liberty interest before affording any neutral process at all. A custody hearing held only after Petitioner has already been detained cannot retroactively provide the notice and neutral pre-deprivation determination that the Fifth Amendment required before Respondents took his liberty.

35. Administrative exhaustion is not statutorily required in proceedings under 28 U.S.C. § 2241. The Ninth Circuit has repeatedly recognized that "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Although a district court may require exhaustion where agency expertise is necessary to develop a proper record, where administrative review may allow the agency to correct its own

errors, or where exhaustion would promote judicial efficiency, **exhaustion may be waived where administrative remedies are inadequate or ineffective, pursuit of those remedies would be futile, irreparable injury would result, or the proceedings would be void.** *Id.*; *see also Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004).

36. Petitioner's claims are constitutional and legal in nature. Petitioner does not challenge the validity of any removal proceeding, the merits of his pending asylum application, or Respondents' authority to pursue removal proceedings against him. **Rather, Petitioner challenges Respondents' decision to revoke his liberty and detain him after more than three and one-half years of supervised liberty in the community without first providing constitutionally adequate pre-deprivation procedures. Whether Respondents violated the Fifth Amendment by depriving Petitioner of that protected liberty interest without advance notice or a meaningful opportunity to be heard presents a constitutional question beyond the competence of the immigration courts.**

37. The administrative process is incapable of providing the relief sought here. **Neither an Immigration Judge nor the Board possesses authority to adjudicate Petitioner's constitutional challenge, to determine whether Respondents violated the Due Process Clause by detaining him without**

**<u>adequate procedural safeguards, or to grant habeas corpus relief ordering his release.</u>** Nor can either enjoin future re-detention. Requiring further administrative exhaustion would therefore neither eliminate the need for judicial review nor permit the agency to provide the relief sought in this Petition.

38. Nor would further administrative proceedings meaningfully develop the factual record. The material facts are not in dispute. Petitioner was paroled from immigration custody in December 2022, remained at liberty in the community for more than three and one-half years while complying with DHS and ICE reporting requirements known to Petitioner and counsel, and was detained at a scheduled ICE processing appointment he voluntarily attended, without first receiving notice that Respondents intended to revoke his release and without any pre-deprivation custody determination. The issues presented are therefore overwhelmingly constitutional and legal.

39. Critically, Petitioner's principal constitutional claim concerns an injury that was complete before any administrative custody proceeding could have occurred. His primary requested remedy is restoration of the liberty Respondents terminated on August 19, 2026 without pre-deprivation process. Although Petitioner requests a prompt § 1226(a) custody hearing in the alternative, such a hearing would provide only post-deprivation process and therefore would not

retroactively cure the absence of the process constitutionally required before his detention.

40. Finally, requiring further exhaustion would inflict precisely the type of irreparable injury recognized by courts considering challenges to continued immigration detention. **Petitioner's constitutional injury occurred when Respondents deprived him of his liberty without first providing constitutionally adequate process, and that injury continues with each additional day of detention.** Accordingly, Petitioner has satisfied, or alternatively is excused from, any prudential exhaustion requirement applicable under 28 U.S.C. § 2241, and this Court should reach the merits of his constitutional challenge.

## VII. LEGAL ARGUMENT

### A. Petitioner Acquired a Substantial Protected Liberty Interest Through Respondents' Own Grant of Release and Through More Than Three and One-Half Years of Compliant Liberty.

41. While noncitizens located outside the United States are not granted the full protection of the Constitution, **the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.** *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause

applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690.

42. The Supreme Court in *Jennings v. Rodriguez* addressed only statutory interpretation and expressly declined to resolve the constitutional questions surrounding immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018). Courts within this Circuit have recognized that *Jennings* left intact as-applied constitutional challenges to detention. *See Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 578–79 (N.D. Cal. 2020).

43. A protected liberty interest can arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). District courts throughout the Ninth Circuit have recognized that **once the government elects to release a noncitizen, that individual acquires a concrete interest in remaining free from physical restraint, and that interest may not be extinguished arbitrarily.** *See Oli v. Andrews*, No. 1:26-cv-00477-DJC-AC, 2026 U.S. Dist. LEXIS 20443, at *5 (E.D. Cal. Jan. 30, 2026) ("[E]ven when the government initially has the discretion to detain or release someone from custody, once the

government decides to release them, that individual gains a constitutionally protected liberty interest in remaining out of custody," quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025); *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 U.S. Dist. LEXIS 106210, at *21 (C.D. Cal. May 13, 2026).

44. *M.B. v. Noem* is closely analogous to the facts here. There, the Eastern District of California held that a noncitizen released on parole and later re-detained at a routine check-in possessed a protected liberty interest and was entitled to due process protections before re-detention. The court emphasized that release creates an expectation of continued liberty that cannot be revoked absent appropriate procedural safeguards. *M.B. v. Noem,* No. 1:26-cv-00005-DJC-AC, 2026 WL 74155 (E.D. Cal. Jan. 9, 2026). Two recent decisions reinforce that result. In *Palencia-Vargas v. Rios*, the Central District held that a noncitizen released after presenting at the border developed a substantial liberty interest and that re-detention without notice and a pre-detention hearing violated procedural due process; the court ordered immediate release. No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *3–4 (C.D. Cal. Aug. 20, 2026). And in *Ranvir S. v. Andrews*, the Eastern District granted habeas to a parolee with no criminal history who was re-detained at a regularly scheduled ICE check-in without notice or a hearing,

holding both that § 1226(a) governed under *Rodriguez-Vazquez* and that due process required pre-deprivation process. No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *1–2 (E.D. Cal. Aug. 24, 2026). Petitioner's circumstances closely track those cases.

45. The interest does not depend solely on the label affixed to the release. In *Zapata v. Kaiser*, the Northern District of California held that noncitizens released on recognizance are likewise entitled to a hearing before re-detention, explaining that the constitutional protection attaches to the fact of release itself regardless of the statutory mechanism by which release occurred. *Zapata v. Kaiser*, 801 F. Supp. 3d 919 (N.D. Cal. 2025). Here, however, the release label is no longer uncertain: DHS's own records expressly identify Petitioner as "PAROLED" and imposed ICE reporting "[a]s a condition of [his] parole." That affirmative grant of parole reinforces the liberty interest created by his subsequent years of supervised freedom.

46. Petitioner's liberty interest is independently established by the life he has built in this country, without regard to any prior grant of release. Recent decisions of this District and the Eastern District hold that **a protected liberty interest in freedom from detention need not depend on a prior discretionary release by immigration authorities.** In *Diaz Hernandez v. Blanche*, the court held

on materially similar facts—a noncitizen apprehended in the interior, never previously released by the agency—that "Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time he lived in the United States and the ties he built to the community over the past several years." No. 5:26-cv-04187-AJR, 2026 WL 2281008, at *3 (C.D. Cal. Aug. 4, 2026). Notably, the petitioner in *Diaz Hernandez* had resided in the United States only since December 2022—the same month Petitioner arrived—and the court found that period sufficient. *Id.* at *1, *3. Accord *Vallejo v. Warden*, No. 1:26-cv-05320-DAD-SCR, 2026 WL 2391062, at *2 (E.D. Cal. Aug. 14, 2026) ("Even though Petitioner was not previously released at the discretion of immigration officials, she has a general liberty interest in freedom from detention."); *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 2025 WL 3567862, at *6 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

47. **Petitioner's position is stronger than that of the petitioners in Diaz Hernandez and Vallejo.** Their liberty interests accrued through the passage of time while the government took no notice of them. Petitioner's interest accrued through the passage of time *and* through Respondents' own conduct: Respondents

detained him, evaluated him, elected to release him on parole, directed him to report, received him at reporting appointment after reporting appointment, authorized him to work, and at every one of those contacts permitted him to remain at liberty.

### B. Under *Rodriguez-Vazquez v. Bostock*, Petitioner's Interior Detention Is Governed by 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225(b)(2).

48. On July 30, 2026, the Ninth Circuit held "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." See *Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). That holding binds this Court and the immigration courts alike.

49. Petitioner falls squarely within that rule. He was taken into custody on August 19, 2026 at a scheduled ICE processing appointment at the Los Angeles Federal Building—more than three and one-half years after DHS paroled him into the United States. He was not apprehended at the border, and he was not intercepted while presenting himself for admission. Whatever may be said of the manner of his December 2022 entry, the detention challenged in this Petition is governed by § 1226(a), not § 1225(b)(2). See *Ranvir S.*, 2026 WL 2475510, at *1

(applying *Rodriguez-Vazquez* to a parolee re-detained at a regularly scheduled ICE check-in).

50. *Rodriguez-Vazquez* also forecloses the rationale that has made administrative custody relief unavailable to noncitizens in Petitioner's position. Under *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board treated every noncitizen who was not admitted as an "applicant for admission" subject to mandatory detention under § 1225(b)(2), and immigration judges accordingly declined jurisdiction to conduct custody redeterminations. **The Ninth Circuit has now rejected the statutory interpretation on which that practice depends. What remains is the constitutional question, and *Rodriguez-Vazquez* does not answer it.** A decision clarifying which subsection authorizes Petitioner's custody does not supply the process that was owed before that custody began, and it does not restore the liberty already taken.

**C. Due Process Required Notice and a Hearing Before a Neutral Decisionmaker Before Respondents Revoked Petitioner's Liberty.**

51. Once a protected liberty interest is established, the question becomes what process was due and when. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). That question is answered by weighing three factors: **the private interest affected;**

**the risk of erroneous deprivation through the procedures used and the probable value of additional safeguards; and the Government's interest, including the burden additional process would impose.** *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

52. Where a deprivation is predictable, where pre-deprivation process is not impracticable, and where the conduct is authorized rather than random and unauthorized, the Constitution requires that the process come ***before*** the deprivation. *Zinermon v. Burch*, 494 U.S. 113, 132, 136–39 (1990). Each condition is satisfied here. Respondents' decision to detain Petitioner was planned—they summoned him to the appointment at which they seized him—it was executed by officers acting within their authority, and it could have been preceded by the very custody hearing the agency routinely provides.

***1. The private interest is at its maximum.***

53. The interest at stake is "the most elemental of liberty interests—the interest in being free from physical detention." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). It is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society

liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.”).

54. Measured on its own terms, the interest here is substantial: a documented grant of parole by DHS in December 2022; more than three and one-half years of continuous presence in the community; an unbroken record of reporting to ICE beginning February 23, 2023; an affirmative asylum application submitted on October 18, 2023; valid employment authorization and a Social Security number; continuous employment and service through his church; a wife and two daughters who lived with him and depend on him financially; a residence available to him upon release; and the complete absence of any criminal history whatsoever. These are precisely the ties on which courts have grounded a substantial liberty interest. *Diaz Hernandez*, 2026 WL 2281008, at *3; Palencia-Vargas, 2026 WL 2448311, at *3; Ranvir S., 2026 WL 2475510, at *1–2.

***2. The risk of erroneous deprivation was, and remains, extremely high.***

55. The second factor ordinarily requires a court to predict how likely the challenged procedure is to produce error. **Here the procedure Respondents used before detaining Petitioner was no procedure at all.** Petitioner was given no notice that his liberty was to be taken, no opportunity to be heard, and no hearing

of any kind. Any decision to detain him was made unilaterally by officers of the enforcing agency. **No neutral decisionmaker reviewed that determination before Petitioner was jailed.**

56. Nor has any adjudicator examined the supervision record Respondents themselves created and retain—the reporting appointments kept, the biometrics submitted, the work authorization granted, the known residence, and the years of compliance with the express reporting condition of parole. Those records materially bear on the only regulatory interests that could justify confinement—danger and flight risk—and underscore the risk of error when detention is imposed without review by a neutral decisionmaker. See *Palencia-Vargas*, 2026 WL 2448311, at *4 (finding a significant risk of erroneous deprivation where the petitioner had been released, had not violated the terms of release, and received no pre-detention hearing); *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO (HC), 2025 U.S. Dist. LEXIS 183995, at *15 (E.D. Cal. Sept. 18, 2025).

57. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209–10 (9th Cir. 2022), does not point the other way. The Ninth Circuit there found a small risk of erroneous deprivation because the petitioner "was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody

determinations and right to seek additional bond hearings." **Petitioner has received none of those protections—not before his detention, and not since.**

***3. The Government's interest in detaining first and hearing later is minimal.***

58. The Government's legitimate interests are in ensuring appearance at removal proceedings and in protecting the public, and those interests are served only where an individualized determination establishes that detention is actually necessary to secure them. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). **Respondents made precisely that determination themselves, repeatedly, for more than three and one-half years.**

59. The administrative burden of the process Petitioner says was owed is slight. A § 1226(a) custody hearing is a routine, low-cost proceeding the agency conducts as a matter of course. *Diaz Hernandez* held the Government's interest in detaining "without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided." 2026 WL 2281008, at *5 n.2.

60. Each *Mathews* factor therefore weighs decisively in Petitioner's favor. **Because Respondents deprived Petitioner of his protected liberty interest without constitutionally adequate procedures, his detention violates the Due Process Clause of the Fifth Amendment.** This conclusion is not mitigated by the duration of the detention to date; even detention of less than six months may be unconstitutional where, as here, it is imposed without the procedural safeguards due process requires. *See Trinh v. Homan*, 333 F. Supp. 3d 984 (C.D. Cal. 2018).

**D. No Materially Changed Circumstances Justified Summary Detention.**

61. **Courts in this Circuit have held that once a noncitizen has been released, federal agents may not re-arrest him absent evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous, has become a flight risk, or is now subject to a final order of removal.** *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176–77 (N.D. Cal. 2017). **Petitioner falls into none of those categories.**

62. He is not dangerous: he has no criminal history of any kind—no arrest, no charge, no conviction, no citation, no warrant. He has not become a flight risk: he was taken into custody at an appointment he voluntarily attended, as he had attended every appointment before it, and his wife and children remain at the

family residence. And he is not subject to a final order of removal: he has never appeared before an Immigration Judge, and his first master hearing is set for September 1, 2026.

63. The only reason ever offered for the detention—that Petitioner "had entered the country illegally"—is not a changed circumstance at all. It is the same circumstance Respondents knew when they apprehended and processed him in December 2022 and then affirmatively paroled him into the United States subject to an ICE reporting condition. A fact known to the Government when it granted parole cannot itself supply a new circumstance justifying summary re-detention years later. Cf. *Nola*, 2026 U.S. Dist. LEXIS 106210, at *21.

64. To the extent Respondents assert some other basis for the detention, that assertion cannot be resolved by Respondents' own unreviewed say-so. **Where the noncitizen disputes the notion that changed circumstances justify his arrest, he is entitled to a prompt hearing before a neutral decisionmaker.** *Saravia*, 280 F. Supp. 3d at 1176–77. An allegation is not a finding. Due process exists precisely to test allegations of that kind before liberty is taken, and Respondents afforded Petitioner no forum in which to answer any.

**E. A Later Bond Hearing Cannot Cure the Completed Pre-Deprivation Violation.**

65. Courts have recognized that a post-deprivation bond hearing cannot cure the constitutional injury caused by unlawful detention. *See Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 U.S. Dist. LEXIS 85165, at *18–19 (S.D. Cal. Apr. 16, 2026); *Nola v. Dep't of Homeland Sec.*, 2026 U.S. Dist. LEXIS 106210, at *29–30 (C.D. Cal. May 13, 2026); *Arturo Hernandez Arechiga v. Bowen*, No. EDCV 26-1516-AS, 2026 U.S. Dist. LEXIS 115840, at *11–12 (C.D. Cal. May 26, 2026). As the court explained in *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), **"such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."**

66. The Northern District has made the same point concretely: "Even if Petitioner received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention." *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 U.S. Dist. LEXIS 133824, at *7 (N.D. Cal. July 14, 2025); *accord Juarez Barrientos v. Moss*, No. 1:26-cv-05943-NW, 2026

WL 2283034 (E.D. Cal. Aug. 7, 2026) (later bond review does not cure a due-process injury inflicted at the outset).

67. *Diaz Hernandez* removed jurisdictional uncertainty about the availability of a bond hearing—still concluded that another post-deprivation bond hearing would not cure a due process violation caused by detention without constitutionally adequate pre-deprivation procedures and ordered immediate release. 2026 WL 2281008, at *4–*6. The same remedial approach appears in two even more recent cases. *Palencia-Vargas* ordered the petitioner's immediate release to the same conditions that existed before re-detention and enjoined future re-detention without notice and a pre-detention hearing. 2026 WL 2448311, at *4. *Ranvir S.* likewise granted the habeas petition after previously ordering immediate release and barred future re-detention absent advance notice and a pre-deprivation hearing before a neutral factfinder. 2026 WL 2475510, at *2.

68. The reasoning applies with full force here. **Petitioner is not requesting an initial custody determination. He seeks restoration of the liberty interest Respondents themselves created when they paroled him and allowed him to remain at liberty in the community, under their own supervision, for more than three and one-half years.** Allowing the government a second opportunity to justify detention now—after the unlawful deprivation—would

effectively reward the initial constitutional violation and permit the continued deprivation of liberty that due process is designed to prevent. The Constitution requires process before or at the time liberty is taken, not after the fact.

**F. Immediate Release Restoring the Status Quo Ante Is the Appropriate Remedy.**

69. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). Federal courts retain "a fair amount of flexibility" in determining the appropriate remedy for unlawful detention. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). The traditional remedy for unconstitutional detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody.").

70. Release "is necessary to return him to the status quo," which is "the last uncontested status which preceded the pending controversy"—here, Petitioner's liberty before August 19, 2026. *Diaz Hernandez*, 2026 WL 2281008,

at *5. That status was not a bare absence of enforcement. It was a documented parole subject to reporting, followed by years of compliance, work authorization, affirmative pursuit of asylum, stable family life, and community service. Palencia-Vargas and Ranvir S. confirm that immediate release restoring the pre-detention status quo is an appropriate habeas remedy where a previously released noncitizen is re-detained without the pre-deprivation process the Constitution requires. *Palencia-Vargas*, 2026 WL 2448311, at *4; *Ranvir S.*, 2026 WL 2475510, at *2.

71. **Immediate release is especially appropriate because Petitioner's immigration proceedings and asylum application remain pending. Release would neither terminate nor interfere with them.** Petitioner remains subject to the authority of the Immigration Court, has every incentive to continue pursuing the asylum claim he himself filed, and can appear at every scheduled hearing while living in the community under the same conditions that existed before his unconstitutional detention—conditions with which he complied for more than three and one-half years without a single missed appointment.

72. Alternatively, should the Court decline to order immediate release and instead direct Respondents to provide an individualized custody hearing under 8 U.S.C. § 1226(a), Petitioner respectfully requests that the Court prescribe the

constitutional procedures governing that hearing: sufficient advance notice; a meaningful opportunity to present evidence and argument with counsel present; a neutral decisionmaker; consideration of whether conditions short of detention can reasonably address any identified risk; a written statement of reasons sufficient to permit meaningful review; and placement upon Respondents of the burden of proving by clear and convincing evidence that Petitioner presently poses a danger to the community or risk of flight that cannot reasonably be addressed through conditions of release. See *Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *2 (E.D. Cal. Aug. 24, 2026); *Palencia-Vargas v. Rios*, No. 5:26-cv-04471-DTB, 2026 WL 2448311, at *4 (C.D. Cal. Aug. 20, 2026); *Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (9th Cir. 2017).

## VIII. CAUSES OF ACTION

### Count I — Fifth Amendment Procedural Due Process: Re-Detention Without Pre-Deprivation Notice or Hearing

73. Petitioner incorporates by reference each preceding paragraph.

74. Respondents violated and continue to violate Petitioner's due process rights by detaining him after more than three and one-half years of supervised,

compliant liberty without providing any notice, any bond hearing, or any opportunity for an individualized determination of whether detention is justified.

75. Petitioner's prior release from immigration custody created a protected liberty interest in his continued freedom. *See Zadvydas v. Davis; M.B. v. Noem; Zapata v. Kaiser.* That interest is independently reinforced by the length of his residence and the substantial family, employment, and community ties he developed while living under Respondents' supervision. *See Diaz Hernandez v. Blanche; Vallejo v. Warden.* Respondents could not extinguish that liberty without meaningful procedural safeguards, including notice and a hearing before a neutral decisionmaker.

76. Here, Respondents detained Petitioner at a scheduled appointment he voluntarily attended, without any hearing preceding the detention. As a result, Petitioner has received no individualized determination of whether he poses a danger to the community or a flight risk. This complete denial of process violates the Fifth Amendment. Due process requires a meaningful opportunity to be heard before the Government deprives an individual of an established liberty interest, and that requirement is not satisfied by categorical rules that foreclose any hearing.

77. The absence of any materially changed circumstance further demonstrates why the pre-deprivation process was necessary. For more than three years after Respondents released Petitioner, he consistently complied with the ICE reporting requirements known to Petitioner and counsel, appeared for every scheduled appointment, pursued his asylum application, maintained employment authorization, remained at his known residence with his wife and children, and accumulated no criminal history. Before taking him into custody, Respondents identified to Petitioner no new criminal conduct, reporting violation, evidence of danger, evidence of flight risk, or other materially changed circumstance that warranted terminating his longstanding liberty. Those facts heightened the risk of erroneous deprivation and required that any asserted basis for re-detention be tested before a neutral decisionmaker before Petitioner was jailed.

78. *Rodriguez-Vazquez v. Bostock* resolves the statutory framework governing Petitioner's present custody, but it does not cure the constitutional injury alleged here. That injury occurred when Respondents deprived Petitioner of his established liberty without the pre-deprivation procedures required by the Fifth Amendment and continues for each day he remains detained as a result of that deprivation.

**Count II — DETENTION CONTRARY TO 8 U.S.C. § 1226(a)**

79. Petitioner incorporates by reference each preceding paragraph.

80. Under *Rodriguez-Vazquez v. Bostock*, a noncitizen present without admission who is apprehended in the interior of the United States is detained under 8 U.S.C. § 1226, not § 1225(b)(2). Petitioner was taken into custody on August 19, 2026 at a scheduled ICE processing appointment in Los Angeles, more than three and one-half years after DHS paroled him into the United States. His present detention therefore is governed by § 1226(a).

81. Section 1226(a) establishes a discretionary custody framework rather than the mandatory-detention regime Respondents previously asserted applied to similarly situated noncitizens. Respondents nevertheless detained Petitioner without affording the custody procedures applicable to detention under § 1226(a). His continued detention contrary to that statutory framework violates federal law. See *Rodriguez-Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026); *Ranvir S. v. Andrews*, No. 1:26-cv-00774-TLN-CSK, 2026 WL 2475510, at *1 (E.D. Cal. Aug. 24, 2026).

**Count III — IN THE ALTERNATIVE, ENTITLEMENT TO A PROMPT CONSTITUTIONALLY ADEQUATE § 1226(a) CUSTODY HEARING**

82. Petitioner incorporates by reference each preceding paragraph.

83. Petitioner maintains that immediate release restoring the pre-detention status quo is the appropriate remedy for the completed pre-deprivation violation alleged in Count I. In the alternative, should the Court decline to order immediate release, Petitioner is entitled to a prompt individualized custody hearing under 8 U.S.C. § 1226(a).

84. To provide meaningful constitutional protection, any court-ordered custody hearing should occur promptly before a neutral decisionmaker, permit Petitioner to be represented by counsel and present evidence, require a written and reasoned decision, and require Respondents to establish by clear and convincing evidence that detention is necessary because Petitioner presently poses a danger to the community or a risk of flight that cannot reasonably be addressed through conditions of release.

85. This alternative request does not concede that a post-detention hearing cures the constitutional violation alleged in Count I. It seeks alternative relief only

if the Court declines to restore Petitioner to the supervised liberty he possessed before August 19, 2026.

## IX. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Assume jurisdiction over this matter;

(b) Order Respondents to show cause why the writ should not be granted, on an expedited schedule;

(c) Order Respondents not to remove or transfer Petitioner outside the jurisdiction of this Court pending resolution of this Petition;

(d) Declare that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2);

(e) Declare that Petitioner's detention without pre-deprivation notice and a hearing violated the Fifth Amendment's Due Process Clause;

(f) Grant the writ of habeas corpus and order Respondents to IMMEDIATELY RELEASE Petitioner from custody subject to the same conditions of supervision in effect before August 19, 2026, or such other reasonable conditions as the Court deems appropriate, and order

Respondents to return any property and documents confiscated from Petitioner in connection with his detention;

(g) As individualized relief with respect to Petitioner, and to the extent authorized by 8 U.S.C. § 1252(f)(1), enjoin Respondents from re-arresting or re-detaining Petitioner under 8 U.S.C. § 1226 absent compliance with constitutional protections, including reasonable advance notice of the basis for the proposed re-detention and a pre-deprivation hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner presently poses a danger to the community or a risk of flight that cannot reasonably be addressed through conditions of release;

(h) In the alternative, if the Court declines to order immediate release, order Respondents to provide Petitioner a prompt individualized custody hearing under 8 U.S.C. § 1226(a) before a neutral Immigration Judge, with counsel permitted to appear, a meaningful opportunity to present evidence and argument, consideration of reasonable alternatives to detention, the Government bearing the burden of proof by clear and convincing evidence, and a written, reasoned decision expressly identifying and applying the

governing standard; and order Petitioner released if the hearing is not timely provided;

(i) Order Respondents to file a notice of compliance within three (3) days of entry of judgment;

(j) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: August 28, 2026

## PROOF OF SERVICE

I hereby certify that on August 28, 2026, I served a copy of the attached PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, by EMAIL DELIVERY to:

U.S. Attorney's Office:

**USACAC.ImmHabeas@usdoj.gov**

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

/s/ Cesar O. Montoya (SBN: 320291)
MCM LAW GROUP, P.C.
206 W. 4th St Suite 437
Santa Ana, CA 92701
Phone: (714) 732-0287
Email: cesar@mcmlawpc.com
Counsel for Petitioner

Dated: August 28, 2026